UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL BLOSTEIN,

     Plaintiff,                            No. 22-12856

v.

                                       Honorable Nancy G. Edmunds

J.P. MORGAN CHASE BANK, N.A.,

     Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [9]**

Plaintiff Joel Blostein, successor trustee for the Susan G. Karabelnick Trust (U/A/D December 17, 2004, as amended) ("the Trust"), brings breach of contract and negligence claims against Defendant J.P. Morgan Chase Bank, N.A. in this diversity suit. (ECF No. 7.) Defendant moves to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) Plaintiff has not filed a response. Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motion will be decided without oral argument. For the reasons below, the Court GRANTS Defendant's motion to dismiss.

## I.    Background

This case stems from six wire transfers that the Trust's former trustee, Susan Karabelnick, authorized Defendant to send from an account held in the Trust's name. According to the complaint, Karabelnick is an elderly woman and a "vulnerable adult" subject to Plaintiff's guardianship who was the victim of an elderly abuse scam and was duped into initiating the wire transfers.

1

Plaintiff alleges that on September 28, 2021, Karabelnick went to Defendant's Woodward/Salem branch and requested a transfer via wire using the SWIFT system in the amount of $132,989.52 from Plaintiff's account to "Climb Real Estate Co., Ltd." routed through a receiving bank, "The Siam Commercial Bank Public Company, Limited," in Bangkok, Thailand. Defendant's branch manager became alarmed and thus reversed the wire transfer after initially executing it and reported to Oakland County's Adult Protective Services that Defendant believed Karabelnick to be a "vulnerable adult" and likely the victim of financial fraud. Karabelnick had previously, earlier in September 2021, made two similar transfers in the amounts of $35,000 and $92,451.77. Also, following the report, Karabelnick requested and Defendant executed three additional electronic fund transfers—on September 29 and October 4 and 6, 2021—at several of Defendant's other branches in the total amount of $329,949.85. Plaintiff avers that Defendant knew or should have known that Karabelnick was a vulnerable adult and that the transfers were prompted by a fraudulent scheme to defraud her and Plaintiff.

Plaintiff seeks reimbursement from Defendant for the six wire transfers under theories of breach of contract and negligence in this lawsuit. The parties' contractual relationship is governed by a Deposit Account Agreement that was entered into between Karabelnick (on behalf of the Trust) and Defendant sometime prior to 2018 as well six Wire Transfer Outgoing Requests and Agreements.[1] Defendant now moves to dismiss Plaintiff's complaint, arguing that while the underlying events are "unfortunate," "Plaintiff's

---

[1] The correct version of the Account Agreement and copies of the wire transfer agreements are attached to the motion. (ECF Nos. 9-2, 9-3.) Because they were "referred to in the Complaint and are central to the claims contained herein," they may be considered by the Court. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

attempt to shift blame to [Defendant] for acting at Karabelnick's explicit, written authorization is untenable as a matter of law." (ECF No. 9, PageID.100.)

## II.     Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. "[A] complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barney v. PNC Bank*, 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To survive a Rule 12(b)(6) motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III.    Analysis

Defendant moves to dismiss both Plaintiff's breach of contract and negligence claims.

### A.     Defendant's motion is unopposed.

Plaintiff has not filed a response to Defendant's motion to dismiss despite the parties stipulating to extend the time to file a response twice. (*See* ECF Nos. 12, 13.) Thus, the motion is unopposed. A motion to dismiss that is unopposed may be granted

on that basis alone. *See Humphrey v. United States Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (noting that where a "plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motion to dismiss, the arguments have been waived"); *Scott v. Tennessee*, No. 88-6095, 1989 U.S. App. LEXIS 9653, at *4-6 (6th Cir. July 3, 1989) (affirming the district court's grant of the defendants' unopposed motion to dismiss and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"). This is especially true where the plaintiff is represented and does not need the leeway provided to pro se litigants. Thus, Defendant's motion should be granted. Alternatively, the Court also considers the motion on the merits.

**B.     Plaintiff has not stated a breach of contract claim.**

Plaintiff alleges that Defendant breached its contract by executing the disputed transfers and by failing to freeze or flag the account or advise its branches of "the known elder abuse scam." Defendant makes two arguments regarding this claim.

Defendant first argues that Plaintiff's breach of contract claim fails because it is defeated by the unambiguous provision of the Account Agreement that states "[w]e will not be liable for anything we do when following your instructions." (ECF No. 9-2, PageID.148.) Indeed, Plaintiff acknowledges in his complaint that Karabelnick initiated all six underlying wire transfers, which is further demonstrated by her signature on the wire agreements. *(See* ECF No. 9-3.) Thus, under the terms of the underlying contract itself, Plaintiff's breach of contract claim is subject to dismissal.

And to the extent Plaintiff alleges that Defendant breached the agreement by failing to freeze or flag the account, advise its branches of the known elder abuse scam, or

"reverse, block or delay" the wire transfers, Defendant argues there are no contractual provisions requiring performance of these actions. To state a breach of contract claim under Michigan law, the plaintiff must show: "(1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 718 (E.D. Mich. 2005) (citation omitted). Here, the contract states that if Defendant suspects that a customer "may be the victim of a fraud, scam or financial exploitation," it "*may* decline or prevent any or all transactions to or from [the] account" and it "*may* refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from [the] account . . . ." (ECF No. 9-2, PageID.148 (emphasis added).) Because this language is discretionary, it cannot serve as the basis for a breach of contract claim.

### C.   Plaintiff has not stated a negligence claim.

Plaintiff alleges Defendant breached a duty it had "voluntarily assumed" to protect Karabelnick by permitting multiple, "clearly fraudulent" wire transfers. Defendant makes two arguments about this claim as well.

Defendant first argues that Plaintiff's negligence claim is preempted by Article 4A of the Michigan Uniform Commercial Code ("UCC"), which sets forth "[t]he rights and liabilities for payment orders, or wire transfers." *See First Place Bank v. Olympia Logistics & Servs.*, No. 11-13542, 2013 U.S. Dist. LEXIS 36689, at *11 (E.D. Mich. Mar. 18, 2013) (internal quotation marks and citation omitted). Because Article 4A is "'intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article'" and

"'resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those state[d] in this Article,'" any common law claims based upon wire transfers have been found to be displaced by Article 4A. *See, e.g.*, *McLaughlin v. Comerica Bank*, No. 21-12661, 2022 U.S. Dist. LEXIS 197970, at *15-16 (E.D. Mich. Apr. 18, 2022) (quoting Mich. Comp. Laws § 440.4602 & cmt). Here, Plaintiff's negligence claim is based upon the underlying wire transfers. Thus, it is preempted by Article 4A of the UCC.

Defendant next argues that even if Plaintiff's negligence claim is not preempted, Plaintiff may not bring a tort claim against Defendant where the parties' relationship is governed by a contract and Defendant does not owe an independent legal duty to Plaintiff. "Under Michigan law, tort actions based on a contract require that a 'defendant owe a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie.'" *Shecter Landscaping, Inc. v. JPMorgan Chase Bank NA*, 614 F. Supp. 3d 553, 558 (E.D. Mich. 2022) (quoting *Fultz v. Union-Commerce Assoc.*, 683 N.W.2d 587, 592 (Mich. 2004)). Here, the parties' relationship is contractual, and generally, "there is no duty that obligates one person to aid or protect another." *See Hill v. Sears, Roebuck & Co.*, 822 N.W.2d 190, 196 (Mich. 2012) (internal quotation marks and citation omitted). And even if Defendant "voluntarily assumed" a duty to protect Karabelnick as Plaintiff alleges, liability cannot attach under this theory where there is no allegation Defendant undertook an act to protect Karabelnick and did so negligently. *See Ashbrook v. Block*, 917 F.2d 918, 926 (6th Cir. 1990) (citation omitted). Thus, Plaintiff has not stated a negligence claim that is plausible on its face.

**IV.     Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 9, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 9, 2023, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager